IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SANDIA VISTA L.L.C.,

                  Plaintiff,

    vs.                                       CIVIL NO.  05-1154 WJ/LFG

TERESA, I L.L.C. et al.,

                  Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT WILGER'S MOTION TO COMPEL

THIS MATTER comes before the Court on Defendant John Wilger, Jr's Motion to Compel Sandia Vista, L.L.C. to Respond to Requests for Production [Doc. 75].  The Court considered the motion, response and reply and determines that oral argument is not necessary.

### Factual and Procedural Background

Sandia Vista, L.L.C. ("Sandia Vista") purchased a building from Teresa I, L.L.C. ("Teresa I") on or about July 28, 2004 and now sues Teresa I and others, including John Wilger, Jr. ("Wilger"), for breach of contract, fraud, misrepresentation, and other claims.  Wilger is described in the Complaint as an agent of Teresa I and the person who "acted on behalf of Defendant Teresa I as the primary contact with Plaintiff in regard to the sale of the Property" at issue in this case. [Second Amended Complaint, Doc.108, at ¶¶ 17-18].

Wilger seeks to compel Plaintiff to produce documents identified in Request for Production Nos. 3, 6 and 15.

In Request for Production No. 3, Wilger asks Plaintiff to "produce true and correct copies of documents that show any assessment, inspection, or evaluation of the property's condition that is

the subject of this suit." While certain documents relating to assessment, inspection or evaluation were produced, other documents were withheld under a claim of privilege.

Sandia Vista produced a privilege log on April 3, 2006, and produced various documents, in response to discovery requests from a different Defendant, Teresa I. Teresa I did not move to compel responses to the documents withheld under claim of privilege. Thereafter, on May 1, 2006, Defendant Wilger submitted document requests, similar to those served by Teresa I. Sandia Vista responded to Wilger's requests in a manner similar to its responses to Teresa I's, submitting an amended privilege log dated June 8, 2006. These privilege logs identify numerous documents which were withheld from production under the claim of attorney-client privilege or work product, or both.

In <u>Request for Production No. 6</u>, Wilger requested that Sandia Vista "produce true and correct copies of documents that show Plaintiff's evaluation of the condition of the building, analysis of whether or not to proceed with the purchase of the building and/or communications with any party regarding these matters." In response, Sandia Vista stated it already produced some of those documents and referred Wilger to the privilege logs.

Finally, in <u>Request for Production No. 15</u>, Wilger sought to have Sandia Vista "produce true and correct copies of correspondence between the Plaintiff and any of its employees, contractors, third party representatives, agents, or attorneys, wherein the condition of the building that is the subject of this suit, prior to its purchase by Plaintiff is discussed. This specifically includes, but is not limited to, documents regarding the inspection of the building, failure to inspect the building, results of failure to inspect the building, and/or consequences if the building is not inspected."

After the parties clarified the Request as pertaining to documents created prior to the closing [Doc. 75, Ex. C, at 4], Sandia Vista maintained its objections based on attorney-client privilege.

For reasons hereafter stated, the Court grants Wilger's motion to compel, ordering production

of some of the material and an *in camera* inspection of other documents which Sandia Vista withheld.

<u>**Timeliness**</u>

An initial issue before the Court concerns the timeliness of Wilger's motion.  Sandia Vista argues that the documents sought in Wilger's motion were the same documents previously sought in written discovery by Teresa I in its document request.  Sandia Vista objected to that document request, and Teresa I failed to file a motion to compel within the twenty days required by D.N.M.LR-Civ. 26.6.

The district's local rules impose a time limit for the party seeking discovery to file a motion to compel when the opposing party has stated an objection.  The failure to file a motion to compel within the time limit required constitutes an acquiescence in the objection.  This Court previously held that a party may not make an "end run" around the time limits of the local rule by subsequently serving a subpoena duces tecum seeking the same information which was the subject of the prior document request.  <u>Martinez v. Espanola Public Schools</u>, CIV 04-737 MCA/LFG [Doc. 188] (D.N.M. Jul. 19, 2006); <u>Galaxy Ventures, L.L.C. v. Rosenblum</u>, CIV 03-1236 JH/LFG [Doc. 154] (D.N.M. Mar. 8, 2005).

Sandia Vista argues that Wilger is the principal individual operating Teresa I; that Wilger answered Teresa I's interrogatories; that Teresa I and Wilger are represented by the same attorney; and that Teresa I acquiesced in the prior objections and, therefore, Wilger "should not have a second shot at contesting objections by simply submitting a similar document request by a related defendant."

Wilger responds that Teresa I is a separate entity and was sued separately by Sandia Vista. If Sandia Vista contends that Wilger and Teresa I are one and the same, then it stands to reason that one of these parties should be dismissed from this lawsuit.  Finally, Wilger contends that he is a separate party and has an independent right to file document requests and engage in discovery

3

separate and apart from Teresa I.  The Court agrees.

Sandia Vista made a tactical decision to sue both Teresa I and Wilger.  They are separate entities.  Just as the legal identity of a corporation is separate and distinct from the identity of an individual shareholder, so, too, with an L.L.C.  Indeed, the very purpose of establishing an L.L.C. or a corporation is to insulate individuals from liability.  In this case, Teresa I, L.L.C. is one defendant and Wilger is another.  The fact that Wilger is a principal in Teresa I makes no difference.  Wilger is a separate defendant entitled to engage in discovery.

While Teresa I acquiesced in Sandia Vista's objections by its failure to file a motion to compel within the time established by Rule 26.6, Wilger, as a separate defendant, could not have filed a motion to compel under Rule 26.6 as the discovery in question was not his discovery, but Teresa I's.

The Court overrules Sandia Vista's objection that the motion to compel is untimely.

<u>**Applicability of Privileges to the Specific Documents at Issue**</u>

The Motion to Compel is directed to seven categories of documents.  Most of these are e-mails and other correspondence between various persons, some of whom are attorneys.  Wilger asserts that the requested documents are relevant to the claims and defenses herein, as they may show Plaintiff Sandia Vista's knowledge of the condition of the building, both at present and prior to its purchase of the building.  Sandia Vista contends that the documents it has withheld are protected by attorney client privilege and/or work product protection.

**1.   Antoon/IPS Personnel Correspondence**

Wilger seeks production of e-mail and correspondence between Doug Antoon, in-house counsel for Integrated Property Services Company ("IPS") d/b/a Goodman Realty Group ("Goodman Realty"), and various recipients including:  (1) numerous employees of IPS, and/or (2) James Dobbie, and/or (3) Gary Goodman, which correspondence was withheld on grounds of attorney/client

privilege and work product.

The Court finds that the requested material is not protected and must be disclosed, and it grants the Motion as to the Antoon correspondence, with exceptions as discussed below.

a. *Identity of the Various Parties and Actors*

*IPS and Goodman Realty*

When Sandia Vista filed this lawsuit, it did not include IPS or Goodman Realty as party plaintiffs. Sandia Vista contends that IPS d/b/a Goodman Realty, the management company for the property at issue, "handles practically all operations for Sandia Vista, including this litigation." Sandia Vista further asserts that the attorney of record for Sandia Vista in this lawsuit "communicates almost daily with IPS corporate counsel and also with IPS personnel." [Doc. 103, at 2]. Sandia Vista argues that, because of the "legal relationship" between itself and these other two companies and their counsel, the communications at issue are protected by attorney-client privilege. Wilger states in his Motion that Goodman Realty investigated, inspected, ordered or performed maintenance and repair work on the subject building both before and after the purchase at issue herein. [Doc. 75, at 2]. Sandia Vista disputes this statement, asserting that Goodman Realty never ordered or performed any maintenance or repair work on the building before the purchase. [Doc. 103, at 2-3]. However, in his Affidavit, Gary Goodman says that IPS has managed the property in question since Sandia Vista became the landlord, and IPS "did the due diligence work prior to the purchase of the property . . . ." [Doc. 103, Ex. 4]. Wilger also asserts that Goodman Realty prepared documents for Sandia Vista's lenders relative to the condition and maintenance and repair costs for the subject building, both before and after the purchase. [Doc. 75, at 2]. Sandia Vista disputes this, contending that "IPS did not prepare [such] documents for Sandia Vista's lenders . . . ." [Doc. 103, at 3].

*Doug Antoon*

In his Affidavit [Doc. 84, Ex. 1], Doug Antoon ("Antoon") states that he is the Vice-President and General Counsel for Goodman Realty, and that "I handle legal matters on behalf of Sandia Vista, L.L.C." He began his employment with Goodman Realty on August 28, 2005. The property transaction at issue herein took place in July 2004; the original complaint in this action was filed in November 2005. Antoon states further that all of his correspondence relating to the property at issue and to this litigation "has been with corporate officers and employees, as well as with outside counsel." By "corporate" officers and employees, the Court presumes that Antoon is referring to Goodman Realty, which he identifies as his employer.

The Court notes that, on August 7, 2006, Antoon, identifying himself as "counsel for Plaintiff, Sandia Vista, L.L.C." filed a motion for admission to practice *pro hac vice* pursuant to D.N.M.LR-83.3, stating that he is general counsel for IPS d/b/a Goodman Realty and "performs legal services on behalf of Plaintiff, Sandia Vista, L.L.C." [Doc. 129].

*James Dobbie*

James Dobbie ("Dobbie") is the Vice President and Chief Operating Officer of IPS d/b/a Goodman Realty. [Affidavit of James Dobbie, Doc. 103, Ex. 3]. Wilger states that Dobbie has been designated as an expert witness in this case. [Doc. 75, at 2, 7]. In his Affidavit, Dobbie does not address the correspondence between himself and Antoon, although he does state that he communicated with former corporate counsel, Judy Seigel, with respect to possible litigation between IPS and Sandia Vista. [Id.].

*Gary Goodman*

Gary Goodman ("Goodman") is the "organizer, manager and registered agent of Sandia Vista, " and the President and Chief Executive Officer of IPS. [Affidavit of Gary Goodman, Doc. 103, Ex.

6

4].  Goodman states that all communications between IPS personnel and the attorneys for Sandia

Vista and IPS, including Doug Antoon, were made in the course of providing legal services and were

confidential.   In its responses to interrogatories, Sandia Vista states that it "does not maintain

employees" [Doc. 103, Ex. 5, at 3- 4], but it lists Gary Goodman as the organizer, manager and

registered agent.  [Id., at 2].  Sandia Vista further lists "every member manager and officer" of Sandia

between January 1, 2003 and the present as:  (1) Gary Goodman Family Ltd. Partnership (99%

ownership), and (2) Rachel Goodman Generation Skipping Trust (1% ownership).  [Id.].

> b.  *Attorney-Client Privilege*

Pretrial discovery of documents under Fed. R. Civ. P. 34 may be had of material within the

scope of Rule 26(b)(1), that is, "any matter, not privileged, that is relevant to the claim or defense of

any party."   The phrase "not privileged" in the context of discovery encompasses the same concept

of privilege as that term is understood in the law of evidence.  United States v. Reynolds, 345 U.S.

1, 6, 73 S. Ct. 528, 531 (1953).

In this diversity action, which is based entirely on state law, New Mexico law on attorney-

client privilege applies.  Fed. R. Evid. 501.[1]  Under New Mexico law, a client has a privilege to refuse

to disclose and to prevent any other person from disclosing confidential communications made for

the purpose of facilitating the rendition of professional legal services to the client.  Rule 11-503(B)

NMRA.

The purpose of the privilege is to encourage full and frank communication between attorneys

and their clients, in the interest of promoting the broader public interest in the observance of law and

---

[1]However, with respect to the work product doctrine, federal law is controlling.  In re A.H.
Robins Co., "Dalkon Shield" IUD Prods. Liability Litig., 107 F.R.D. 2, 8 (D. Kan. 1985), *citing*
Hanna v. Plumer, 380 U.S. 460, 85 S. Ct. 1136 (1965).

the administration of justice.  <u>Public Serv. Co. of N.M. v. Lyons</u>, 129 N.M. 487, 495, 10 P.3d 166,

174 (Ct. App. 2000), *citing* <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 101 S. Ct. 677 (1981).

      The privilege belongs to the client.  Rule 11-503(C) NMRA; <u>State v. Armijo</u>, 118 N.M. 802,

817, 887 P.2d 1269, 1284 (Ct. App. 1994).  The person who was the lawyer at the time of the

communication may claim the privilege, but only on behalf of the client.  Rule 11-503(C) NMRA.

The party resisting discovery has the burden of establishing existence of the privilege.  <u>State v.</u>

<u>Gallegos</u>, 92 N.M. 370, 378, 588 P.2d 1045, 1053 (Ct. App. 1978).

      In this case, Sandia Vista is the party claiming the benefit of the privilege and therefore has

the burden of establishing it.  Antoon is not, at this writing, counsel of record for Sandia Vista in this

litigation.  It appears, however, that Antoon has in the past acted as Sandia Vista's counsel and, in

fact, now seeks to enter his appearance on Sandia Vista's behalf in this case.  Even assuming that

Antoon is Sandia Vista's lawyer, however, Sandia Vista can only assert the privilege for confidential

communications between its own attorney and itself; it cannot assert the privilege with respect to

communications between its attorney and that attorney's other clients.

      The documents at issue are those between Antoon and employees of IPS d/b/a/ Goodman

Realty.  It may be true, as Sandia Vista asserts, that Sandia Vista and IPS work closely together.

However, they are separate legal entities.  Similarly, Dobbie is employed by IPS d/b/a/ Goodman

Realty; he is not an employee of Sandia Vista, an entity which has no employees.

      Goodman, while not an employee of Sandia Vista, appears to be its only officer or agent.

Thus, Sandia Vista may not validly assert attorney-client privilege with regard to any documents

except possibly those between Goodman, who may been seen as the corporate representative, and

Antoon, as attorney for Sandia Vista.  As the Supreme Court noted, "Admittedly complications in

the application of the privilege arise when the client is a corporation, which in theory is an artificial

creature of the law, and not an individual; but this Court has assumed that the privilege applies when the client is a corporation." Upjohn Co. v. United States, *supra*, 449 U.S. 389-90.

Sandia Vista argues that the communications between Antoon and corporate personnel at IPS constitute internal legal communications within IPS, and "Defendants give no authority by which they can obtain in-house legal correspondence from any company." [Doc. 103, at 7]. However, Sandia Vista has possession of this correspondence, which relates to the claims and defenses herein. thus, the information is discoverable under Rule 26 unless it is privileged. Sandia Vista is not the holder of the privilege, with respect to any correspondence between Antoon and IPS or Goodman Realty employees. Therefore, Sandia cannot assert the privilege.

The Court finds that attorney-client privilege does not apply to any of the material in this first group aside, possibly, from correspondence between Antoon and Goodman. If attorney-client privilege were the only consideration, the Court would order that the correspondence between Antoon and Goodman be produced to the Court for an *in camera* inspection to determine whether attorney-client privilege applies to any of this material, while all other Antoon correspondence be produced to Wilger. However, the work product analysis in this case compels the Court to order that a larger group of materials be submitted for *in camera* inspection, as discussed below.

c. *Work Product Doctrine*

The work product doctrine is distinct from and broader than the attorney-client privilege. United States v. Nobles, 422 U.S. 225, 238 n.11, 95 S. Ct. 2160, 2170 n.11 (1975). The attorney-client privilege covers only confidential communications between attorney and client and focuses on protecting the relationship itself. The work product doctrine is not limited to communications but "protects both the attorney-client relationship and a complex of individual interests particular to attorneys that their clients may not share." In re Sealed Case, 676 F.2d 793, 809 (D.C. Cir. 1982).

9

The doctrine was first articulated by the United States Supreme Court in the case of Hickman v. Taylor, 329 U.S. 495, 67 S. Ct. 385 (1947), and was incorporated into the Federal Rules in 1970. Fed. R. Civ. P. 26(b)(3).  The work product privilege exists "to promote the adversary system by safeguarding the fruits of an attorney's trial preparation from the discovery attempts of the opponent. The purpose of the work product doctrine is . . . to encourage effective trial preparation." United States v. Am. Tel. & Tel. Co., 642 F.2d 1285, 1299 (D.C. Cir. 1980).

The party seeking to assert the work product doctrine as a bar to discovery has the burden of establishing that it is applicable.  Barclaysamerican Corp. v. Kane, 746 F.2d 653, 656 (10th Cir. 1984).  The Tenth Circuit notes that the work product doctrine "protects only that which was prepared in preparation. for litigation." Vargas v. United States (In re Grand Jury Proceedings), 727 F.2d 941, 945 (10th Cir. 1984).  The doctrine does not protect facts contained within the work product but is meant rather to provide protection for legal impressions and strategies. Resolution Trust Corp. v. Dabney, 73 F.3d 262, 266 (10th Cir. 1995).

Recently the Tenth Circuit rejected a call for broadening the reach of the work product doctrine by creating a new exception to the waiver rules, reiterating the Supreme Court's admonition that privileges are to be strictly construed, as they contravene "the normally predominant principle of utilizing all rational means for ascertaining truth." In re Qwest Commc'ns Int'l, Inc., 450 F.3d 1179, 1185 (10th Cir. 2006).

To be protected work product, a document must have been "prepared in anticipation of litigation or for trial" by or for a party, or by or for that party's representative.  Fed. R. Civ. P. 26(b)(3).  A document prepared in the regular course of business, or for "business advice," rather than in anticipation of litigation, is not work product. In re Grand Jury Proceedings, 156 F.3d 1038, 1042 (10th Cir. 1998).  The fact that a matter might conceivably end up in litigation someday, is not

the appropriate test. "While one might argue that almost all of the work attorneys do, or the advice they dispense, is in anticipation of litigation or its avoidance, the work product immunity requires a more immediate showing than the remote possibility of litigation." Garfinkle v. Arcata Nat'l Corp., 64 F.R.D. 688, 690 (S.D.N.Y. 1974).

The work product protection is not absolute. It may be waived, In re Qwest Commc'ns Int'l, Inc., supra, at 1186; and disclosure may be had of work product material upon a showing of substantial need and inability to obtain the substantial equivalent of the materials by other means. Fed. R. Civ. P. 26(b)(3).

The documents which Sandia Vista seeks are identified in the privilege log as e-mail and correspondence between Doug Antoon and numerous IPS personnel, including Dobbie and Goodman, which contain "Discussion of litigation or pending litigation, damages." [Doc. 75, Ex. C, Privilege Log, at 1]. As noted above, Antoon is both Vice-President and General Counsel for Goodman Realty and also handles legal matters on behalf of Sandia Vista. [Doc. 84, Ex.1].

In his Affidavit, Dobbie states that Ffhoenix Cuivre, the tenant which Sandia Vista inherited when it purchased the property from Teresa I, began making numerous complaints about the HVAC system almost immediately after the sale was completed in late July 2004. [Doc. 103, Ex. 3, at 1]. Dobbie states further that the "possibility of litigation over the HVAC problem was apparent in August 2004" and that, beginning that month, "we" (apparently meaning IPS d/b/a Goodman Realty) attempted to resolve the problem by means of letters from outside counsel Charles Price which, by December 2004, had escalated to "demanding compensation from Wilger (through Charles Price's letters)." [Id., at 1-2]. By February, Dobbie and Goodman "were discussing the documents needed for a lawsuit against Wilger." [Id., at 2]. Dobbie does not specifically mention any correspondence with or by attorney Antoon in his Affidavit.

11

Charles Price ("Price") also submits an Affidavit.  [Doc. 103, Ex. 2].  Price is an attorney in private practice.  He states in his Affidavit that he acted as counsel for IPS, Sandia Vista, and Goodman during the time period relevant to this case.  Specifically, he has been serving as attorney for IPS since its inception and also represents Goodman "and various companies for which he is the principal."  [Id., at 1].  He states that he and his law firm (Myers, Oliver & Price) served as attorneys for Sandia Vista from March 2004 to March 2005 in connection with the purchase of the property at issue herein.  He continued to represent Sandia Vista after the purchase and, beginning August 30, 2004, drafted several demand letters to Teresa I's attorney.  [Id., at 1-2].  Price says that the possibility of litigation was contemplated in August 2004, and that his demand letters to counsel for Teresa I ran from that time until the spring of 2005, when "the prospect of litigation had become a probability" and he recommended Paul Kienzle as litigation counsel.  [Id., at 2-3].

Price states further that all of his contact with Sandia Vista was through Goodman and other officers and employees of IPS.  [Id., at 2].  Indeed, he could not have communicated with Sandia Vista through any of its employees, since Sandia Vista "does not maintain employees."

Sandia Vista states in its briefing that it "has no employees or personnel other than Gary Goodman," and that it "acts through IPS for most purposes."  [Doc. 103, at 11].  However, IPS is not a party to this case.  Although the Court makes no inquiry whether joinder of IPS as a party in this action would destroy diversity, it may well be that is the reason why Sandia Vista (an Illinois corporation) is the sole named Plaintiff.  If IPS were a formal party, there would be less question as to the work product nature of these communications.  But IPS is not a party herein, and it is a separate legal entity from Sandia Vista.

It is difficult for this Court, without conducting an *in camera* review of the hundreds, and perhaps thousands of e-mail messages at issue herein, to determine whether the correspondence

12

between Antoon and others, as sketchily described in the privilege log, meets the tests set forth above for work product protection.  Some of these communications may have involved simply business advice – Antoon, after all, wears two hats: corporate vice-president, and general counsel.  Some may relate solely to factual matters.  And some of the correspondence may include the attorney's strategies and legal impressions with respect to this litigation.  Furthermore, any discussions between Antoon and any individual not representing Sandia Vista – that is, anyone other than Goodman – may well constitute a waiver of the work product protection.

Sandia Vista is the party with the burden of establishing work product protection, and it has created the obscurity that complicates this inquiry by choosing to conduct its business operations by means of a corporation without any employees, and then naming that corporation as the sole Plaintiff herein.  In light of this, and in light of the Tenth Circuit's rather restrictive view of the work product concept, the Court directs Sandia Vista to conduct a thorough re-review all of the Antoon correspondence described in the privilege log.

Sandia Vista must make a careful determination as to the nature of each separate e-mail message.  Any purely factual matters or discussion of business matters must be produced to Wilger. Only material which Sandia Vista, after careful consideration, deems to contain "mental impressions, conclusions, opinions, or legal theories" regarding this litigation should be submitted to the Court for *in camera* inspection for a final determination of the  applicability of work product protection.

**2. Price/IPS Correspondence**

The second group of material consists of e-mail and correspondence between Charles Price, transactional counsel for Plaintiff Sandia Vista, and recipients including:  (1) IPS personnel, and/or (2)  James Dobbie, and/or (3) Gary Goodman, withheld on grounds of attorney/client privilege and work product.  These persons and entities were identified above.

13

Charles Price is outside counsel for Sandia Vista, and the reasoning applicable to the Antoon correspondence, with respect to attorney-client privilege and the work product doctrine, applies as well to any correspondence between Price and other parties.  There is no attorney-client protection in this litigation for any correspondence between Price on the one hand, and employees of IPS on the other, aside from Goodman.  However, work product protection may apply.

The Court's ruling with respect to material in this group is the same as for the Antoon correspondence:  Sandia Vista must carefully cull out any purely factual or business material and produce that material to Wilger.  The remainder shall be submitted to the Court for an *in camera* inspection to determine applicability of the attorney-client privilege and work product doctrine.

### 3. Siegel/IPS Correspondence

The third category of material sought by Wilger consists of e-mail and correspondence between Judy Siegel ("Siegel"), former in-house counsel for Goodman Realty, and recipients including:  (1) IPS personnel, and/or (2) James Dobbie, and/or (3) Gary Goodman, withheld on grounds of attorney/client privilege and work product.

Judy Siegel is Antoon's predecessor as in-house counsel for Goodman Realty.  The reasoning applicable to the Antoon correspondence, with respect to attorney-client privilege and the work product doctrine, applies as well to any correspondence between Siegel and other parties.  There is no attorney-client protection in this litigation for any correspondence between Siegel on the one hand, and employees of IPS on the other, aside from Goodman.  However, work product protection may apply.

The Court's ruling with respect to material in this group is the same as for the Antoon correspondence:  Sandia Vista must carefully cull out any purely factual or business material and produce that material to Wilger.  The remainder shall be submitted to the Court for an *in camera*

inspection to determine applicability of the attorney-client privilege and work product doctrine.

### 4. **Dobbie/Goodman Correspondence**

The fourth group of materials consists of five e-mail exchanges between James Dobbie and Gary Goodman between August 2004 and November 2005 "relating to legal issues raised," withheld on grounds of work product. The content of the correspondence is described further in the privilege log as discussions concerning "HVAC and liability," "damage figures and suit," "materials received during due diligence period, damages," "Tenant's estoppel," and "documents needed for Wilger lawsuit." Neither Dobbie nor Goodman is an attorney, and attorney-client privilege was not asserted with respect to these communications.

As discussed above, Goodman is the sole representative of Sandia Vista and, as its "organizer, manager and registered agent," if not employee, he is the one point of contact between Sandia Vista and the outside world. Although Goodman is not named as a party herein, nevertheless he is, apparently, the only human being who could possibly represent Sandia Vista and communicate with its attorney or others regarding this litigation. The Court finds that Goodman is, therefore, the "representative of a party" – *i.e.*, Sandia Vista – for purposes of Rule 26(b)(3), which provides work product protection for "documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."

If Goodman is seen as the "party" or "representative of a party," then any discussions which Goodman had with Dobbie about matters concerned with this lawsuit may be protected work product. Any purely business discussions or factual material within these messages would fall outside the protection, of course, and it is possible that Goodman waived his right to work product protection by discussing these matters with Dobbie, who is not an employee of Sandia Vista. The Court will

15

need to see these five e-mails in order to make the work product determination.

Although there has been no ruling on the issue by the Tenth Circuit, other courts have held that work product protection is not confined to the work of an attorney but can extend as well to work done by a non-attorney party.  As noted above, Rule 26(b)(3) itself contemplates work product protection for material prepared by a party, if done in anticipation of litigation.  The protection for party-generated material would be overly broad, however, unless it were confined to only such material which would reveal litigation strategy or legal theories.

> Subdivision (b)(3) reflects the trend of the cases by requiring a special showing, not merely as to materials prepared by an attorney, but also as to materials prepared in anticipation of litigation or preparation for trial by or for a party or any representative acting on his behalf. The subdivision then goes on to protect against disclosure the mental impressions, conclusions, opinions, or legal theories concerning the litigation of an attorney or other representative of a party.

Advisory Committee Comment to Rule 26(b)(3), 1970 Amendment.

In Carver v. Allstate Ins. Co., 94 F.R.D. 131, 133 (S.D. Ga. 1982), a case dealing with documents prepared by insurance claims adjuster, the court noted that Rule 26(b)(3)'s codification of Hickman v. Taylor "notably expands the doctrine by extending discovery protection to the work product of a party or his agents and representatives as well as that party's attorney."

In responding to the defendants' argument that tape recordings made by a party in anticipation of litigation could not be considered "work product" because they did not contain the attorney's thoughts and impressions, a court stated:  "Defendants are living in the past, and are presenting a pre-1970 argument. 'The 1970 amendment [to Fed.R.Civ.P. 26] extends the work product protection to documents and things prepared for litigation or trial *by or for the adverse party himself* or his agent.' "  Haigh v. Matsushita Elec. Corp. of Am., 676 F. Supp. 1332, 1357 (E.D. Va  1987) (brackets and italics in original).

16

In <u>Moore v. Tri-City Hospital Authority</u>, 118 F.R.D. 646 (N.D. Ga. 1988), the court held that the individual plaintiff's diary entries, in which he ruminated on persons who could assist him in his anticipated civil rights lawsuit, attorneys who could help him, and legal arguments that might be made on his behalf, were covered by work product protection.  Some of these entries were made before plaintiff consulted with prospective counsel, and others were made after those consultations and reflected conversations with the lawyers which contained legal theories involved in the case.  The court held that all of the entries were protected under the work product doctrine.

Similarly, in <u>Crandall v. City and County of Denver</u>, No. 05-CV-00242-MSK-MEH, 2006 WL 1488850 (D. Colo. May 24, 2006), the court held that work product protection applied to a plaintiff's diary entries which recorded information about incidents of exposure to adverse environmental conditions at Denver International Airport, which alleged exposure later became the subject of litigation by the plaintiff and others.  The plaintiff created the diary at the request of her attorney for the purpose of communicating with counsel "in an efficient manner without constant telephone calls."

> The unrebutted record establishes that Ms. Crandall began keeping the referenced diary at the request of counsel, that she did it in anticipation of filing litigation, and that the purpose of the diary is to facilitate communication with and transfer relevant information (for use in the litigation) to her counsel.

<u>Id.</u>, at *1.  *See also*, <u>In re Dayco Corp. Derivative Sec. Litig.</u>, 102 F.R.D. 468 (S.D. Ohio 1984) (diary entries by defendant concerning the transactions forming the basis of the lawsuit, made in anticipation of litigation and kept at the direction of her employer's outside counsel, held to be work product).

The extension of the work product doctrine to material such as the Goodman/Dobbie conversations could potentially expand work product protection to almost any conversation between

a party and anyone else, so long as the discussion touched on possible litigation.  The Court does not think the doctrine was intended to be stretched this far, especially not in the Tenth Circuit.

Whether the Goodman/Dobbie correspondence is close enough to "work product" to be accorded the protection of that doctrine, and whether or not Goodman waived the protection by talking to a non-party about litigation-related topics, are matters that can best be determined by an *in camera* inspection.  The Court directs Sandia Vista to produce these e-mails for such inspection.

### 5. Dobbie/Undisclosed Correspondent E-Mail

This group includes an e-mail of January 16, 2006 between James Dobbie and an undisclosed correspondent, withheld on grounds of work product.  The author of this e-mail is not stated; it may be Dobbie, or he may have been the recipient.  The e-mail is described as containing "Instructions for search of corporate documents for initial disclosures."

Dobbie is not an attorney, nor he is a party to this lawsuit.  No one states that the "undisclosed correspondent" is either a party -- that is, Goodman, as representative of Sandia Vista – or an attorney.  In accord with the discussion above, work product protection is therefore not applicable to this item, and it must be disclosed.

### 6. Padilla/Dobbie/Border Mechanical Correspondence

 A November 2004 correspondence between Angela Padilla and James Dobbie to Border Mechanical/Electric, withheld on grounds of work product.

Dobbie states in his Affidavit that the correspondence between Angela Padilla and Border Mechanical in November 2004 "was being used to obtain the amount of damages which existed, which we viewed as attributable to nondisclosures by Teresa I and Wilger, and this was communicated with the expectation of litigation unless settlement could be obtained."  [Doc. 103, Ex. 3, at 2].  Angela Padilla is a former employee of Goodman Realty and functioned as the property

18

manager for the subject property.  [Antoon Affidavit, Doc. 84, Ex. 1, at 1].  No one asserts that she is an attorney, and she cannot be an employee (former or current) of Sandia Vista because, as noted above, Sandia Vista "does not maintain employees."

Correspondence between the Chief Operating Officer of a non-party corporation and one of that corporation's employees, or between that employee and an outside company, fall far outside the realm of work product protection.  The Motion to Compel with respect to this correspondence is granted.

### 7.  Dobbie/Padilla Correspondence

An April 19, 2005 e-mail from James Dobbie to Angela Padilla discussing the manner of disputing repairs with tenant, withheld on grounds of work product.

Dobbie states in his Affidavit that this e-mail was "legal in nature because we had the prospect of being involved in litigation with the tenant by that date."  [Doc. 103, Ex. 3, at 2].

Again, work product protection does not apply to this communication between two non-party non-attorneys.  The Motion to Compel with respect to this e-mail is granted.

### Order

IT IS THEREFORE ORDERED that Defendant John Wilger, Jr's Motion to Compel Sandia Vista, L.L.C. to Respond to Requests for Production [Doc. 75] is granted, as detailed above.

IT IS FURTHER ORDERED THAT all material ordered produced must be served on Wilger within ten days of the date of this Order, and material ordered produced for *in camera* inspection must be submitted to the Court within ten days of the date of this Order.

Lorenzo F. Garcia
Chief United States Magistrate Judge

19