IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SANDIA VISTA L.L.C.,

        Plaintiff,

vs.                                           CIVIL NO. 05-1154 WJ/LFG

TERESA I, L.L.C. et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT FFHOENIX CUIVRE, LLC'S
MOTION TO COMPEL PETER VAN ORREN AND GOODMAN REALTY
GROUP TO PRODUCE DOCUMENTS REQUESTED VIA SUBPOENA**

THIS MATTER comes before the Court on Defendant Ffhoenix Cuivre, L.L.C.'s Motion to Compel Peter Van Orren and Goodman Realty Group to produce documents requested via subpoena [Doc. 94]. The Motion was filed on July 6, 2006. The Court considered the motion, response and reply and determines that oral argument is not necessary.

**Factual and Procedural Background**

Sandia Vista, L.L.C. ("Sandia Vista") purchased a building from Teresa I, L.L.C. ("Teresa I") on or about July 28, 2004 and now sues Teresa I and others, including Ffhoenix Cuivre, L.L.C. ("Ffhoenix"), for breach of contract, fraud, misrepresentation, and other claims. Ffhoenix was the tenant of the property before, during and after the sale that is the subject of this litigation. Sandia Vista alleges that Ffhoenix and others were aware of but fraudulently withheld from Sandia Vista information regarding the condition of the building prior to the purchase.

Ffhoenix served subpoenas on two non-parties, Goodman Realty Group ("Goodman Realty") and Peter Van Orren ("Van Orren"). It is these subpoenas which are the focus of the present Motion.

Integrated Property Services ("IPS") d/b/a Goodman Realty Group is the management company for the property at issue. Gary Goodman ("Goodman") is the President and Chief Executive Officer of IPS d/b/a Goodman Realty Group. [Affidavit of Gary Goodman, Doc. 103, Ex. 4]. In its responses to interrogatories, Plaintiff Sandia Vista states that it "does not maintain employees" [Doc. 103, Ex. 5, at 3- 4], but it lists Gary Goodman as its organizer, manager and registered agent. [Id., at 2]. Peter Van Orren ("Van Orren") is an employee of Goodman Realty Group ("Goodman Realty"). Van Orren and Goodman Realty, when referred to herein collectively, will be called the "IPS Third Parties," in keeping with their own nomenclature in their Response.

Ffhoenix asserts that the IPS Third Parties investigated, inspected, and ordered or performed maintenance and repair work on the building in question both before and after the purchase. [Doc. 94, at 2]. IPS Third Parties dispute this, stating rather that repairs and maintenance were the obligation of Defendant Teresa I prior to the purchase. [Doc. 109, at 2]. Ffhoenix also asserts that Goodman Realty prepared documents for Plaintiff Sandia Vista and for its lenders, related to the condition and maintenance and repair costs for the building, both before and after the purchase. [Doc. 94, at 2]. IPS Third Parties dispute this, stating that Sandia Vista did not make arrangements for assuming Teresa I's loan until after closing on the purchase. [Doc. 109, at 2].

On or about April 19, 2006, Ffhoenix served subpoenas on the IPS Third Parties. The subpoena directed to Goodman Realty asks the company to "produce your entire file to include but not limited to any and all notes, correspondence, invoices, repair estimates and budget analysis relating to the property." [Doc. 94, Ex. A]. The subpoena directed to Van Orren asks him to "produce your entire file to include but not limited to inspection notes and reports, invoices, repair orders, proposals and any and all documents relating to the property." [Doc. 94, Ex. B]. Ffhoenix asserts that these documents are relevant as they may show Sandia Vista's knowledge of the

condition of the building both at present and prior to the purchase. Both subpoenas demanded production on or before May 15, 2006.

On April 20, 2006, at approximately the same time that it served the subpoenas, Ffhoenix served its First Set of Interrogatories, Requests for Production of Documents and Requests for Admissions on Plaintiff Sandia Vista. [*See*, Doc. 47]. Request for Production Nos. 1 and 2 ask Sandia Vista to produce all documents related to HVAC, roofing and structural systems for the building, prior to the purchase (RFP No. 1) and after the purchase (RFP No.2). Sandia Vista responded to these Requests by stating it previously produced all HVAC related documents to Teresa I, subject to the objections made in the Privilege Log based on attorney-client privilege and work product protection. [*See*, Doc. 109, Ex. 1, at 2 ("Page 8")].

Ffhoenix's RFP No. 3 to Sandia Vista asked it to produce all documents evidencing the reasons why it decided to reduce the purchase price for the property. In response, Sandia Vista stated that it previously produced its "Acquisition File" to Defendant Teresa I, which included documents considered by Sandia Vista in evaluating the purchase, "as well as 'Dobbie emails,' 'Prelitigation Correspondence,' and other categories that may contain responsive documents (subject to the objections made)." [Id.].

Ffhoenix did not file a Motion to Compel with respect to Sandia Vista's objections to RFP Nos. 1-3. Failure to file a motion to compel within 20 days after service of an objection constitutes acceptance of the objection, D.N.M.LR-Civ. 26.6; thus, Ffhoenix no longer has the option of contesting Sandia Vista's objections to the discovery requests. However, the IPS Third Parties now raise the same objections to producing the subpoenaed material, and Ffhoenix seeks to challenge those objections. One issue before the Court on this Motion is whether Ffhoenix's failure to challenge Sandia Vista's objections to similar discovery requests will prevent it from compelling

3

production under the subpoenas. This issue is discussed below.

On May 15, 2006, the attorney representing Plaintiff Sandia Vista in this litigation sent a letter to Ffhoenix's counsel stating the IPS Third Parties' objections to the subpoenas, as follows:

> both Goodman Realty and Peter Van Orren object on the basis of vagueness and overbreadth since this request would include all financial documents relating to the lease, all loan documents which were dated after the July 28, 2004 closing, and potentially other irrelevant types of files. The same objections are made for Peter Van Orren as were made for the Peter Van Orren file by Sandia Vista. Goodman Realty would make the same objections for attorney-client privilege and work product that were made by Sandia Vista. It is my understanding that Goodman Realty is the agent for Sandia Vista and that the documents have already been produced. Sandia Vista also produced Peter Van Orren's file.

[Doc. 72, Ex. 1].

On June 7, 2006, Ffhoenix filed its first Motion to Compel with respect to the material sought in these subpoenas. In that "Motion to Compel, For Order to Show Cause and Contempt" [Doc. 65] Ffhoenix stated that neither of the IPS Third Parties had as yet produced any of the documents set forth in the subpoenas, and it asked that the Court order them to do so. Ffhoenix stated further in the June 7 Motion, "Defendant is not requesting privilege communications between the witnesses and their attorney. Other than privilege communication . . . [the IPS Third Parties] must provide all documents requested. [Doc. 65, at 3].

In their Response to the June 7 Motion, the IPS Third Parties, through counsel for Sandia Vista, stated that they "believe this matter has been resolved but file this Response for the record." [Doc. 72, at 1]. The Response stated further that, notwithstanding the objections set forth in the May 15 letter, Plaintiff Sandia Vista "has removed its objections to documents in the Van Orren file that were based on work product, and those documents have been produced. All documents from Peter Van Orren's file have now been produced except attorney-client privileged documents." [Id.].

4

In addition, the Response states that Sandia Vista produced to all Defendants (presumably including Ffhoenix) several additional documents from the files of Goodman Realty which had previously been withheld, and that the IPS Third Parties had now produced "all known documents responsive to the subpoenas (whether owned or possessed by Sandia Vista, LLC or by IPS/Goodman Realty Group)," other than the material listed in a privilege log dated June 8, 2006 which was being withheld on the basis of attorney-client privilege and work product protection. [Id.].

In its Reply [Doc. 76] in support of the June 7 Motion, Ffhoenix noted that the response to the Motion was filed by attorneys for Sandia Vista and was even labeled "*Plaintiff's* Response to Ffhoenix Cuivre's Motion to Compel." From this, Ffhoenix argued that the IPS Third Parties – Goodman Realty and Van Orren – failed to file a response. Ffhoenix stated further that it had not received a privilege log from the IPS Third Parties, and that Sandia Vista's assertion of privileges should not extend to the IPS Third Parties. Rather, the third parties should be required to submit their own privilege logs, Ffhoenix argued, as it has a right to be informed of the specific privileges claimed by these third parties and the nature of the documents being withheld.

Notwithstanding this assertion, Ffhoenix presented arguments on the substance of the privileges in claimed Sandia Vista's log and argued that they were not applicable. Ffhoenix discussed several categories of documents in the log, including: (1) correspondence between Doug Antoon, attorney for Goodman Realty, and IPS/Goodman personnel; (2) correspondence between attorney Charles Price and IPS/Goodman personnel; (3) correspondence between Judy Seigel, attorney for Goodman Realty, and IPS/Goodman personnel; (4) five e-mails between James Dobbie and Gary Goodman; (5) an e-mail between James Dobbie and an unknown correspondent; (6) correspondence between Paul Kienzle, former litigation counsel for Goodman Realty and Sandia Vista, and other attorneys; (7) correspondence from Angela Padilla and James Dobbie to Border Mechanical/Electric;

5

and (8) an e-mail from James Dobbie to Angela Padilla.

On June 23, 2006, Sandia Vista and the IPS Third Parties jointly filed a Motion to Strike Ffhoenix Cuivre, L.L.C.'s Reply in Support of its Motion to Compel [Doc. 79]. The movants noted that Ffhoenix did not mention attorney-client or work product arguments in its opening brief on the Motion to Compel but rather waited to address these issues until the time of the Reply, thereby depriving the IPS Third Parties of their opportunity to respond to those arguments.

In its Response to the Motion to Strike [Doc. 80], Ffhoenix pointed out that it was not aware until it received the Response to the Motion to Compel that the IPS Third Parties intended to rely on the privileges asserted by Sandia Vista, as set forth in the June 8 privilege log. Indeed, the Motion was to compel filed one day before that privilege log was even prepared.

In their Reply in support of the Motion to Strike [Doc. 84], the IPS Third Parties dispute Ffhoenix's contention that it was unaware that they were asserting the privileges set forth in the privilege log. They point, first, to the May 15, 2006 letter objecting to the subpoena requests and making reference to the privilege and work product claims made by Plaintiff Sandia Vista in response to discovery requests by Defendant Teresa I, L.L.C., and which were set forth in the privilege log submitted to all Defendants (including, presumably, Ffhoenix) on April 4, 2006. In addition, the IPS Third Parties note that Ffhoenix's discovery requests directed to Sandia Vista, as noted above, resulted in numerous objections based on attorney-client privilege and work product protection and referred to the April 4 privilege log; however, Ffhoenix never filed a motion to compel with respect to those objections.

On June 28, 2006, the Court entered an Order [Doc. 82] denying Ffhoenix's Motion to Compel. The Court noted that, once an objection is served on a party issuing a subpoena, the recipient has no further obligation to comply with the subpoena. The Court noted further that, after

6

the IPS Third Parties submitted their written objections, they subsequently agreed to waive objections and produce documents, withholding certain other documents on grounds of attorney-client privilege and work product protection, as noted in the privilege log. Ffhoenix, at this point, should have filed a Motion to Compel specific documents. Instead of doing so Ffhoenix argued for production of documents in its Reply brief, thus depriving the IPS Third Parties of the opportunity to respond. The Court therefore denied the Motion to Compel but gave Ffhoenix twenty days to file an appropriate Motion to Compel.

Ffhoenix thereafter filed the present Motion to Compel [Doc. 94], presenting its arguments against application of the attorney-client privilege and work product protections asserted by the IPS Third Parties. In this Motion, Ffhoenix references the same eight categories of documents previously discussed in the Reply to its first Motion to Compel.

## Waiver of Right to File Motion to Compel

The IPS Third Parties contend that the present Motion to Compel should not be considered at all, as Ffhoenix waived its right to contest the objections based on attorney-client privilege and work product immunity. They note that the subpoenas in question are broadly worded and cover the same documents which another Defendant, *i.e.*, Teresa I, requested from someone else, *i.e.*, Plaintiff Sandia Vista, in discovery. The IPS Third Parties state that they referred to these objections in their letter to Ffhoenix dated May 15, 2006 regarding the subpoenas, and that Sandia Vista also asserted the same objections to earlier discovery requests served by Ffhoenix on Sandia Vista.

After Sandia Vista's objections to the discovery requests were served, Ffhoenix never filed a motion to compel. The time for doing so has elapsed. The district local rules state that, unless the party requesting discovery files a motion to compel within 20 calendar days of service of an objection, the party is deemed to have accepted the objection. D.N.M.LR-Civ. 26.6.

The IPS Third Parties state that, in responding to discovery requests, Sandia Vista has produced (presumably to all Defendants, including Ffhoenix) all documents requested, whether possessed or owned by Sandia Vista or IPS Third Parties, and that all of Sandia Vista's files pertaining to the property are in the possession of IPS and always have been. [Doc. 109, at 2, and Ex. 2 thereto, ¶ 3]. The only documents withheld are those indicated on the privilege logs.

The IPS Third Parties argue that, because they objected to Ffhoenix's discovery requests by asserting attorney-client and work product privileges and referred Ffhoenix to the privilege log in making these objections, Ffhoenix has forfeited the right to contest these privileges in connection with the subpoenas, because it did not contest these same privileges when it had a chance to do so in connection with the earlier discovery requests.

The Court agrees that the material sought in Ffhoenix's Requests for Production Nos. 1-3 appears to cover the same material which Ffhoenix seeks to obtain by serving the two subpoenas on non-parties Goodman Realty and Van Orren. This Court previously held that a party may not make an "end run" around the time limits of the local rule by subsequently serving a subpoena duces tecum seeking information which was the subject of an earlier document request to which unchallenged objections were asserted. Martinez v. Espanola Public Schools, CIV. 04-737 MCA/LFG [Doc. 188] (D.N.M. Jul. 19, 2006); Galaxy Ventures, L.L.C. v. Rosenblum, CIV 03-1236 JH/LFG [Doc. 154] (D.N.M. Mar, 8, 2005).

However, Ffhoenix's actions in this situation do not constitute an attempted "end run" such as that condemned in earlier cases. In both of those cases, the party seeking discovery did not serve its subpoenas duces tecum until after the period for contesting objections had expired, and thus was seeking an impermissible second bite at the apple. Here, Ffhoenix served the subpoenas almost contemporaneously with the discovery requests. It is apparent that Ffhoenix did not know who might

8

have possession of these files and was trying to obtain information relevant to this case by serving discovery requests on the only Plaintiff herein, Sandia Vista, and also serving subpoenas at the same time on non-party Goodman Realty and its employee, Van Orren. The IPS Third Parties acknowledge that Ffhoenix was not notified until May 23, 2006 of Sandia Vista's claim that IPS functions as the agent and representative of Sandia Vista and has done so both before and after the property purchase at issue herein. This was well after Ffhoenix served its discovery requests on Plaintiff and served subpoenas on these non-parties.

While it might have been a better practice for Ffhoenix to file a Motion to Compel after receiving Sandia Vista's objections to the discovery requests, Ffhoenix may reasonably have determined that a better course would be to press for the information from Goodman Realty, since, as Goodman Realty now acknowledges, all of Sandia Vista's files are in the possession of Goodman Realty and always have been.

Sandia Vista and Goodman Realty continue to insist that they are essentially, for purposes of this litigation at least, one and the same. They state that IPS d/b/a Goodman Realty handles all matters for Sandia Vista, including this litigation, and Sandia Vista has no employees of its own. *See*, Memorandum Opinion and Order Granting Defendant Wilger's Motion to Compel [Doc. 143], filed herein on August 24, 2006. Yet Sandia Vista organized its business operations as a separate entity from Goodman, for whatever strategic business and/or litigation-related reasons it might have. Sandia Vista, an entity which has no employees and asserts that it conducts all of its business through IPS d/b/a Goodman, named only itself as a party in this action.

It stands to reason that parties such as Ffhoenix, whom Sandia Vista is suing, would make efforts to obtain relevant information from whatever source they think might have such information, whether those sources be parties or non-parties to the litigation. Ffhoenix has a right to do this. The

9

complications in this case were caused by Sandia Vista's choices as to how it conducts its business operations, and Ffhoenix was simply trying to respond to the situation it faced as a result of those choices.

The Court also rejects the IPS Third Parties' assertion that Ffhoenix waived its right to contest the privileges by a statement made in its first Motion to Compel with respect to these subpoenas, to the effect that Ffhoenix was "not requesting privilege communications between the witnesses and their attorney. Other than privilege communication . . . [the IPS Third Parties] must provide all documents requested." By this statement, Ffhoenix was not acquiescing in the IPS Third Parties' definition of what is and is not a privileged document.

The Court finds that Ffhoenix did not forfeit its right to contest the privileges asserted in Sandia Vista's privilege log, on which the IPS Third Parties rely in resisting this Motion to Compel. The Court now turns to the documents at issue under the privilege log.

## **Applicability of Privileges to the Specific Documents at Issue**

The eight categories of documents which Ffhoenix seeks in this Motion, described above, include the same seven groups of documents that were the subject of Defendant John Wilger, Jr's Motion to Compel Sandia Vista, L.L.C. to Respond to Requests for Production [Doc. 75] and which the Court ordered produced either directly to Wilger or to Court for an *in camera* inspection, in its August 24, 2006 Order [Doc. 143] on that motion. Ffhoenix seeks one additional category – correspondence between Paul Kienzle, former counsel for Sandia Vista and Goodman Realty in this litigation, and other attorneys for Sandia Vista – which was not discussed in the earlier Order.

The Court will not reiterate the analysis set forth in the August 24, 2006 Memorandum Opinion and Order [Doc. 143] (hereinafter referred to as the "August 24 Order"), nor the discussion of identities of the various individuals and entities involved in creating and disseminating the

10

correspondence at issue. Rather, the Court incorporates by reference that Order's discussion of attorney-client and work product privileges and their applicability to the documents sought therein, basically the same documents sought in this Motion. The fact that these privileges are now being asserted by different persons or entities changes the complexion of this analysis somewhat, and the Court discusses each group of documents separately below.

**1. Correspondence Between Antoon and IPS/Goodman, and Other Goodman Counsel**

The documents in this group are described in the privilege log as e-mail/correspondence between Doug Antoon ("Antoon") and numerous IPS personnel, as well as between Antoon and outside counsel Charles Price, Paul Kienzle, and Bill Chappell. The log states that these documents contain "[d]iscussion of litigation or pending litigation, damages."

As noted in the August 24 Order, Antoon is the Vice President and General Counsel for Goodman Realty and also handles legal matters for Plaintiff Sandia Vista. Charles Price ("Price") formed IPS d/b/a Goodman Realty and has served as its transactional attorney since its inception; he also represents Sandia Vista. When it became apparent that litigation would result from the transaction in question, Price recommended Paul Kienzle ("Kienzle") as litigation counsel. [Affidavit of Charles Price, Doc. 103, Ex. 2]. Kienzle was former attorney of record for Sandia Vista in this litigation and filed the original complaint on Sandia Vista's behalf. On March 2, 2006, the Court permitted Kienzle to withdraw as attorney for Sandia Vista; Bill Chappell ("Chappell") and Michael Hoeferkamp were substituted. [Doc. 32].

The IPS Third Parties submitted a letter from Kienzle to Gary Goodman (who is both CEO of Goodman Realty and the sole human contact point for Sandia Vista), dated June 16, 2005, which indicates that Paul Kienzle agreed to represent both Sandia Vista and Goodman Realty in this litigation, although Goodman Realty is not a named party. The Chappell firm having taken over for

11

Kienzle, the Court assumes that firm also represents both entities.

In resisting this Motion, Goodman Realty and its employee are the persons claiming the benefit of the privileges. The Court finds that attorney-client privilege applies to any correspondence between Goodman's in-house counsel, Antoon, and any employees of Goodman Realty (or IPS which does business as Goodman Realty) or other counsel also representing Goodman Realty, assuming that the correspondence in question consists of confidential communications made for the purpose of facilitating the rendition of professional legal services to the client. As noted above, the record indicates that all of the attorneys with whom Antoon corresponded – Price, Kienzle, and Chappell – serve or served as counsel for Goodman Realty.

Ffhoenix argues that Goodman Realty waived its right to assert the privilege, by revealing the files to Sandia Vista. The IPS Third Parties assert that the files in question are in the possession of IPS/Goodman Realty and always have been; thus, there has been no transfer from Goodman Realty to Sandia Vista and no "revealing" of confidential materials which might be seen as a waiver. On the other hand, Sandia Vista is a separate corporate entity. It apparently has at least constructive possession and/or control of these documents as well, since it also claims privileges with respect to these materials and seeks to avoid having to disclose them to defendants in this litigation. As noted above, Gary Goodman serves as a link between the two companies, although the companies are organized as separate entities and only one of them was named as a plaintiff in this lawsuit.

A privilege for attorney-client confidential communication or work product protection may be waived, if the material sought to be protected was revealed to third parties outside of the attorney-client relationship. Rule 11-511 NMRA; State v. Hogervorst, 90 N.M. 580, 566 P.2d 828 (Ct. App. 1977); Public Svc. Co. of N.M. v. Lyons, 129 N.M. 487, 10 P.3d 166 (Ct. App. 2000).

Antoon states under oath in his Affidavit that the documents sought in these subpoenas have

always been maintained at Goodman Realty. It is apparent, under these circumstances, that Goodman Realty did not "reveal" the correspondence to Sandia Vista in such as way that the expected confidentiality was violated. While Sandia Vista may not be able to assert attorney-client privilege with respect to this material (aside from any communications between Goodman and corporate counsel), as the Court noted in the August 24 Order; nevertheless, Goodman Realty may validly assert the privilege. The Court finds, under these circumstances, no waiver by Goodman Realty of its right to assert attorney-client privilege with respect to the documents at issue in this Motion. Thus, the Antoon correspondence, to the extent it constitutes confidential communications made for the purpose of seeking or rendering legal advice, is protected by attorney-client privilege.

However, as Antoon serves as a corporate officer as well as counsel for Goodman Realty, it may be that some portions of the Antoon correspondence material consist of purely business discussions, rather than attorney-client communications "made for the purpose of facilitating the rendition of professional legal services to the client." Rule 11-503(B) NMRA.

In the August 24 Order the Court directed Sandia Vista to comb carefully through this apparently voluminous Antoon material, to determine whether the work product privilege actually applies to each of the e-mail messages listed at page 1 of the privilege log, and to produce to Defendant Wilger all material which does not, in fact, fall within that category. Plaintiff Sandia Vista asserts that it has no employees and can only act through IPS/Goodman Realty. Therefore, it is apparent that Goodman Realty employees will be performing the task directed under the August 24 Order. While they are at that task, the Court now directs them, on behalf of Goodman Realty and Van Orren, to consider carefully whether each item covered by the listing on page 1 of the privilege log does, in fact, constitute attorney-client confidential material as between Goodman Realty and its counsel. In so doing, if Goodman Realty finds that purely factual material or business

13

communications are the subject of any of this correspondence, and if such material falls within the scope of the subpoenas at issue herein, that material must be produced to Ffhoenix.

**2. Correspondence Between Charles Price and IPS/Goodman**

Charles Price has served as transactional attorney for Goodman Realty since its inception. Correspondence between him and IPS personnel, including Peter Van Orren, as well as between him and other counsel representing Goodman Realty, as listed at page 2 of the privilege log, is therefore subject to the same analysis as that given above with respect to the Antoon correspondence.

The material is covered by attorney-client privilege. However, as above, Goodman Realty must carefully sift through all of this correspondence and produce to Ffhoenix any material which does not meet the strict definition of attorney-client communications or work product material, and which falls within the scope of the subpoenas.

**3. Correspondence Between Judy Seigel and IPS/Goodman Realty**

Judy Seigel is Doug Antoon's predecessor as in-house counsel for Goodman Realty, and the analysis above with respect to the Antoon correspondence applies to the Seigel correspondence as well.

**4. E-mails Between James Dobbie and Gary Goodman**

James Dobbie ("Dobbie") is the Vice President and Chief Operating Officer of IPS d/b/a Goodman Realty. Gary Goodman is the President and Chief Executive Officer of IPS d/b/a Goodman Realty, and he also serves as representative for Plaintiff Sandia Vista. The correspondence in this group is described as discussion of various matters related to this litigation.

The IPS Third Parties assert work product protection for these e-mails. As discussed in the August 24 Order, these materials may be protected by the work product doctrine, as Gary Goodman is the corporate representative for a party, Sandia Vista. Discussions between Goodman and others

14

involved in the pre-litigation maneuvering could be seen as material prepared by a party – Sandia Vista – in anticipation of litigation. As in the August 24 Order, the Court will direct that these e-mails be produced to the Court for an *in camera* inspection to determine applicability of work product protection.

### 5. E-mail Between Dobbie and an Unknown Correspondent

As was noted in the August 24 Order, the other party to this correspondence has not been identified. The e-mail contains "Instructions for search of corporate documents for initial disclosures." Work product protection has been asserted.

The Court finds that the IPS Third Parties have not carried their burden of demonstrating the work product nature of this material. Dobbie is not a party to this case, nor is his employer, Goodman Realty. This item must be disclosed to Ffhoenix.

### 6. Correspondence between Kienzle and IPS/Goodman and Other Goodman Counsel

All of the persons engaging in this correspondence, as listed in the privilege log, are either employees of Goodman Realty, or attorneys representing Goodman Realty.[1] The correspondence contains "[d]iscussion regarding the litigation." The IPS Third Parties assert attorney-client and work product privilege for this material.

The Court finds that this material is protected by attorney-client privilege. Kienzle was hired by both Goodman Realty and plaintiff Sandia Vista to conduct this litigation. Kienzle is outside counsel; he serves no other function as an officer or employee of Goodman Realty, and it is apparent that any correspondence between him and Goodman Realty employees would have been made in the course of providing litigation representation rather than for purely business advice.

---

[1] "Pearl Menk" has not been identified. The Court assumes she is an employee of Goodman Realty.

15

This material need not be disclosed; however, any purely factual matter included in the correspondence must be produced to Ffhoenix.

### 7. **Correspondence from Padilla and Dobbie to Border Mechanical**

This is described as "[c]orrespondence to confirm damage and liability information." Padilla and Dobbie are employees of Goodman Realty. As noted earlier, Goodman Realty is not a party to this case, and the material cannot therefore be seen as having been prepared by a party in anticipation of litigation. The Motion to Compel is granted with respect to this material.

### 8. **Dobbie/Padilla Correspondence**

Work product protection does not apply to this communication between two non-party non-attorneys. The Motion to Compel is granted with respect to this e-mail.

### Order

IT IS THEREFORE ORDERED that Defendant Ffhoenix Cuivre, L.L.C.'s Motion to Compel Peter Van Orren and Goodman Realty Group to produce documents requested via subpoena [Doc. 94] is granted in part and denied in part as detailed above, pursuant to Fed. R. Civ. P. 45.

IT IS FURTHER ORDERED that all material ordered produced must be served on Ffhoenix Cuivre, L.L.C. within ten days of the date of this Order, and material ordered produced for *in camera* inspection must be submitted to the Court within ten days of the date of this Order.

                                              _/s/ Lorenzo F. Garcia_
                                              Lorenzo F. Garcia
                                              Chief United States Magistrate Judge