IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SANDIA VISTA L.L.C.,

                 Plaintiff,

vs.                                                 CIVIL NO.  05-1154 WJ/LFG

TERESA, I L.L.C. et al.,

                 Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN SUBSTANTIAL PART DEFENDANT DEAVER'S MOTION TO COMPEL

THIS MATTER comes before the Court on Defendant Victoria Deaver ("Deaver")'s Motion to Compel Sandia Vista, L.L.C. to Respond to Requests for Production [Doc. 139].  Plaintiff Sandia Vista, L.L.C. ("Sandia Vista") filed its Response [Doc. 158] and Deaver ("Deaver") then submitted her Reply [Doc. 184].

On December 7, 2006, Sandia Vista filed a Motion to Strike [Doc. 195] part of Deaver's Reply, arguing that Deaver raised an argument in her Reply which had not been raised in the opening memorandum brief in support of the Motion.  The Court denied this motion in an Order dated December 11, 2006 [Doc. 197], finding that the point in question had indeed been raised in the initial memorandum in support.  However, Sandia Vista was given leave to file a Surreply to address the expanded arguments which Deaver made in her Reply.  The Surreply [Doc. 208] was filed on December 20, 2006.

The Motion is now fully briefed.  Oral argument is not necessary.  For the reasons given below, the Court grants in substantial part Deaver's Motion to Compel.

**Factual and Procedural Background**

Sandia Vista purchased a building from Teresa I, L.L.C. ("Teresa I") on or about July 28, 2004 and now sues Teresa I and others, including Deaver, for breach of contract, fraud, misrepresentation, unjust enrichment and other claims. In its Complaint, Sandia Vista alleges on information and belief that the proceeds of the sale of the property were paid to or on behalf of several of the Defendants, including Deaver, that Deaver and the others accepted and retained the benefit thus conferred by Sandia Vista, and that Deaver was unjustly enriched thereby, because the benefit was acquired as a result of the breaches of contract, fraud, misrepresentation and other wrongful acts or omissions alleged in the Complaint. [Second Amended Complaint, Doc. 108, at ¶¶ 138-40].

Deaver served Requests for Production ("RFPs") on Sandia Vista on or about July 11, 2006. Sandia Vista responded to the RFP requests on or about August 7, 2006. Deaver is dissatisfied with the responses and now moves to compel production of documents requested in RFP Nos. 2, 4, 8, 9, 10, 12, and 15. Deaver argues that the information sought is relevant to Sandia Vista's allegations of fraud, upon which the unjust enrichment claim against Deaver is based, and relevant to Sandia Vista's claim for substantial damages. In particular, the RFPs seek information consisting of emails and correspondence related to Plaintiff's alleged damages and to HVAC proposals (the functioning of and responsibility for the HVAC system in the subject building, including the question of who knew what and when about the system's soundness or lack thereof, being one of the major bones of contention in this lawsuit).

Sandia Vista asserts attorney-client privilege and work product protection as to these documents and provided three separate privilege logs. Deaver contends that these protections do not apply, and even if they did, they are trumped by the fact that the information sought has been

disclosed to two persons whom Sandia Vista designated as Rule 26 expert witnesses in its initial disclosure. These two witnesses are James Dobbie and James Dountas. Deaver argues that each of the claims of privilege asserted by Sandia Vista involves documentation and emails to or from these two designated experts.

### Identity of the Various Parties and Actors

Sandia Vista is the lone plaintiff in this lawsuit. Sandia Vista does not maintain employees; its only human face is Gary Goodman ("Goodman"), who is the organizer, manager and registered agent for Sandia Vista. Goodman, described by Sandia Vista as "the only individual directly associated with Sandia Vista," is also the president and Chief Executive Officer of Integrated Property Services Company ("IPS") d/b/a/ Goodman Realty Group ("Goodman Realty"). IPS is the management company for the property that is the subject of this lawsuit and handles all operations for Sandia Vista, including this litigation. [Doc. 103, at 2, and Exs. 4-5; Doc. 158, at 1].

Sandia Vista asserts that "Sandia Vista does not generally act without the involvement of IPS." [Doc. 158, at 2]. IPS and Sandia Vista work closely together and they share an attorney, Doug Antoon ("Antoon"), who is also a Vice President of IPS. [Doc. 84, Ex. 1; Doc. 148]. However, IPS and Sandia Vista are separate entities, and neither IPS nor Goodman Realty is a party to this action. Both James Dobbie ("Dobbie") and James Dountas ("Dountas") are employees of IPS d/b/a Goodman Realty; they are not employees of Sandia Vista.

Dobbie is the Vice President and Chief Operating Officer of IPS d/b/a/ Goodman Realty. [Doc. 103, Ex. 3]. In its Disclosure of Expert Witnesses, Sandia Vista listed Dobbie as an expert witness who "may testify regarding the difference in the value of the Sandia Vista property due to the costs of the HVAC maintenance and water treatment solution over and above what would have been normal for the HVAC system." [Doc. 184, Ex. 1, at 1-2].

3

James Dountas is the Property Manager of IPS. [Doc. 158, at 3]. Plaintiff listed Dountas in its Disclosure of Expert Witnesses as an expert witness who "may testify about cost figures for the treatment alternatives and for a normally operating HVAC system." [Doc. 184, Ex. 1, at 2].

## Discussion

### RFP Nos. 2 and 4

In RFP No. 2, Deaver asks Sandia Vista to "produce true and correct copies of any e-mails and correspondence relating to damage figures and the lawsuit." In RFP No. 4, Deaver asks Sandia Vista to produce "true and correct copies of any e-mails and correspondence relating to Plaintiff's alleged damages that are the subject of this lawsuit."

Sandia Vista objects to both RFPs, stating that "any correspondence between it and its attorneys, whether directly or indirectly through IPS personnel" is protected by attorney-client privilege.[1] Sandia Vista identifies its attorneys as Antoon, Paul Kienzle ("Kienzle"), Bill Chappell ("Chappell") and Michael Hoeferkamp ("Hoeferkamp"). [Doc. 139, Ex. B, at 1]. Sandia Vista does not state an objection to these RFPs on grounds of the work product doctrine, and it does not refer to any privilege log.

Sandia Vista further states in its response to the document requests that, in approximately December 2005 through February 2006, Kienzle sent several emails to Antoon requesting damage figures for the purpose of initial disclosures in the lawsuit. Antoon then forwarded the emails to IPS employees, requesting damage figures. These employees included Dobbie, Dountas, and Debbie Bonsignore ("Bonsignore"). Sandia Vista says that it has previously produced its emails and

---

[1]Sandia Vista set forth its objections in response to RFP No. 2 and then referred to those objections in its response to RFP No. 4. Both requests deal with the same information. Thus, the Court's analysis addresses both these document requests. [Doc. 139, Ex. B, at 2.]

4

correspondence relating to damage figures in the initial disclosures, as well as in production to other defendants in this case.

In addition to its claim of attorney-client privilege, Sandia Vista asserts that it does not possess any of the documents requested in these RFPs; rather, it says, IPS has always maintained possession of Sandia Vista's documents.   The Court rejects this ground for withholding the documents.   Sandia Vista acknowledges that the Chappell Law Firm has possession of correspondence which would be responsive to RFP No. 2, and that the Chappell firm is counsel for both Sandia Vista and IPS.   [Doc. 158, at 2].  Indeed, Sandia Vista, through its counsel, prepared a <u>Vaughn</u> index and obviously had the documents available to prepare the index.[2]  Sandia Vista must produce all relevant, non-privileged information that is in its custody or control, whether or not the material is actually in its possession. Fed. R. Civ. P. 34(a). Materials sought under Rule 34 need not be in the responding party's actual possession so long as they are in the party's control; control is presumed if the documents can be obtained from a third party upon request.  <u>Resolution Trust Corp.</u> <u>v. Deloitte & Touche</u>, 145 F. R. D. 108, 110 (D. Colo. 1992); <u>Golden Trade, S.r.L. v. Lee Apparel</u> <u>Co.</u>, 143 F. R. D. 514, 525 (S. D. N. Y. 1992); <u>In re Bankers Trust Co.</u>, 61 F. 3d 465, 469 (6th Cir. 1995) (documents are discoverable under Rule 34 if the responding party has actual possession, custody or control, or has the right to obtain the documents on demand; legal ownership is not determinative).

---

[2]The phrase "Vaughn index" derives from <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973).  It generally consists of a listing of withheld documents and describes the general nature of the withheld document, its author, the date of the document's creation and discloses to whom the document was sent or disclosed.  Withholding counsel must also disclose the nature of the privilege claimed.

The Court also rejects Sandia Vista's assertion of attorney-client privilege with respect to the materials sought in both requests.  In connection with earlier discovery litigation in this case, the Court held that Sandia Vista may not validly assert attorney-client privilege with regard to any documents except possibly those between Goodman, who may be seen as the sole corporate representative of Sandia Vista, and attorneys for Sandia Vista.[3]  Sandia Vista may not assert the privilege as to communications between its attorney and that attorney's other clients, including IPS and its employees.   [Doc. 143, at 8-9].

Sandia Vista's objections to RFP Nos. 2 and 4 are overruled, with one exception.  All material sought in these two document requests must be disclosed, with the exception of any correspondence between Goodman and attorneys for Sandia Vista; messages between Goodman and anyone other than Sandia Vista's attorneys do not fall in this category.

RFP Nos. 8 and 9

In RFP No. 8, Deaver seeks "true and correct copies of any HVAC proposal exchanged between Peter Van Orren and the Goodman Realty Group, IPS, and/or Sandia Vista."  In RFP No. 9, she asks for "true and correct copies of any HVAC proposal exchanged between James Dountas and the Goodman Realty Group, IPS, and/or Sandia Vista."  Sandia Vista responded to this Request by stating that proposals from third parties have already been produced in Plaintiff's supplemental responses to Defendant Wilger on June 9, 2006 and in Plaintiff's responses to Defendant Storm 'N Wire on July 24, 2006.  Sandia Vista does not refer to any privilege log in its response to these RFPs.

---

[3]Rather than repeat the extensive prior analysis rejecting Sandia Vista's attorney-client claim, the Court refers to its earlier ruling in Doc. 143, and incorporates its analysis and ruling herein.

Although Deaver asserts in her briefing that Sandia Vista objected to these RFPs, it does not appear to the Court that any objection at all has been asserted. Sandia Vista simply states that it already produced the material sought. Deaver does not address each specific RFP in her briefing and has not supplied the Court with any evidence that Sandia Vista did not make the productions which it says it made, nor that it withheld any portion of those documents in making the production to other Defendants.

Deaver may presumably obtain these documents from the other Defendants, and the Court will not order Sandia Vista to produce them to Deaver. Therefore, the motion to compel production to RFP Nos. 8 and 9 is denied.

<u>RFP Nos. 10 and 12</u>

In RFP No. 10, Deaver asks Sandia Vista to "produce true and correct copies of any correspondence of James Dountas involving Plaintiff's alleged damages." In RFP No. 12, she asks for "true and correct copies of any correspondence of James Dobbie involving Plaintiff's alleged damages."

Sandia Vista responds to these two RFPs by referring to documents already produced to other defendants. It further objects to production of any correspondence between either Dountas or Dobbie on the one hand, and attorneys for Sandia Vista on the other hand (including Kienzle, Antoon, Hoeferkamp, and Chappell), "as previously indicated in privilege logs stated 4/3/06, 6/8/06 and 7/25/06."

The Court has examined the above-referenced privilege logs (all of which are reproduced in Doc. 184, Ex. 2). It appears that the following items in those logs are covered by the requests in RFP Nos. 10 and 12 (the numbering given below is the Court's designation):

*Privilege Log of April 3, 2006*

Page One:

     1.  Email and correspondence between attorney Antoon and various IPS personnel, including Dobbie and Dountas, involving discussion of pending litigation and damages.  Withheld on grounds of attorney-client privilege and work product protection.

Page Two:

     2.  Email and correspondence between attorney Price (or his assistant) and various IPS personnel including Dobbie, involving discussion of the property and purchase, HVAC, and mortgage issues.  Withheld on grounds of attorney-client privilege and work product protection.

Page Three:

     3.  Emails between Dobbie and Goodman involving, *inter alia*, discussion of HVAC and  liability, damage figures and the lawsuit.  Withheld on grounds of work product protection.

     4.  Email by James Dobbie dealing with instructions for search of corporate documents for initial disclosures (presumably including damages).  Withheld on grounds of work product privilege.

     5.  Email or correspondence between Kienzle and various persons, including Dobbie, regarding the litigation.  Withheld on grounds of attorney-client privilege and work product protection.

Page Four:

     6.  Document labeled "HVAC Comparison," dealing with a comparison of HVAC options and damage amounts, authored or received by Dountas and one other.  Withheld on grounds of work product protection.

     7.  Documents labeled "Proposals, research and responses on HVAC damage alternatives, which include a number of proposals and responses regarding "HVAC solution, damage," and other things, authored or received by Dountas and one other.  Withheld on the following grounds:  "Work Product/Potential expert witnesses."

Page Five:

8.  Correspondence to confirm damage and liability information, authored or received by Dobbie and one other.  Withheld on grounds of work product protection.

9.  Document labeled "Santa Teresa Damage Expenses," and described as "Work toward lists of estimated damages," authored or received by Peter Van Orren, Dountas and/or Dobbie.  Withheld on grounds of work product protection.

### Amended Privilege Log of June 8, 2006

There is nothing in this Privilege Log applicable to the issues involved with respect to RFP Nos. 10 and 12, which is not also included in the April 3, 2006 Privilege Log.

### Privilege Log of July 25, 2006

Page One:

1.  Email forwarding Antoon email regarding documents needed to respond to discovery requests, authored or received by attorney Hoeferkamp and/or Dobbie. Withheld on grounds of attorney-client privilege and work product protection.

2.  Email discussing draft discovery responses, authored or received by attorney Hoeferkamp and/or Dobbie.  Withheld on grounds of attorney-client privilege and work product protection.

3.  Email discussing draft discovery responses and documents, authored or received by attorney Hoeferkamp and/or Dountas and Dobbie.  Withheld on grounds of attorney-client privilege and work product protection.

4.  Email forwarding test results on water sample and scale sample, chain of custody documents and a voice mail regarding the results, authored or received by attorney Hoeferkamp and/or Dountas and Dobbie. Withheld on grounds of attorney-client privilege and work product protection.

5.  Email discussing HVAC binder for production, authored or received by attorney Hoeferkamp and/or attorney Antoon and/or Dountas.  Withheld on grounds of attorney-client privilege and work product protection.

6.  Email containing additional discussion re: HVAC binder, authored or received by attorney Hoeferkamp and/or Dountas.  Withheld on grounds of attorney-client privilege and work product protection.

9

Page Two:

      7.  Email containing discussion of HVAC binder, authored or received by attorney Hoeferkamp and/or Dountas.  Withheld on grounds of attorney-client privilege and work product protection.

      8.  Email containing discussion of HVAC binder / HVAC file, authored or received by attorney Hoeferkamp and/or Dountas.  Withheld on grounds of attorney-client privilege and work product protection.

      9.  Email containing discussion of copying of binder and "HVAC File," authored or received by attorney Hoeferkamp and/or Dountas.  Withheld on grounds of attorney-client privilege and work product protection.

The remainder of page 2 of the July 25 log lists six emails between attorneys for Sandia Vista and other persons, all withheld on grounds of attorney-client privilege alone.  Goodman is not listed as an author or recipient of any of these messages, and therefore Sandia Vista cannot claim attorney-client privilege as to any of these emails.

Page Three:

      10.  Email containing discussion of water samples, authored or received by Dountas and three different attorneys for Sandia Vista.  Withheld on grounds of attorney-client privilege and work product protection.

      11.  Email containing discussion of photos of parking lot, authored or received by attorney Hoeferkamp and/or Dountas and Dobbie.  Withheld on grounds of attorney-client privilege and work product protection.

As discussed above, and in the Court's August 24, 2006 Order [Doc. 143], the Court rejects Sandia Vista's assertion of attorney-client privilege as to any documents that do not constitute communications between Goodman and Sandia Vista attorneys.  Goodman is not involved in any of the documents listed above, and therefore attorney-client privilege does not apply.

With respect to the assertion of work product protection, the documents listed above would normally have to be submitted to the Court for an *in camera* inspection to allow the Court to determine applicability of the doctrine.  However, Deaver contends that the involvement of Dountas

10

and Dobbie, both of whom have been designated by Sandia Vista as expert witnesses who may testify as to valuation and damages issues, overrides the work product protection.

As noted above, in its Disclosure of Expert Witnesses, Sandia Vista listed both Dountas and Dobbie as expert witnesses who "may testify" as to valuation issues and costs related to HVAC maintenance and the water treatment situation at the property in question. [Doc. 184, Ex. 1]. Deaver argues that Sandia Vista has withheld numerous document involving HVAC, discovery responses, water sample testing, filters and solutions which, Deaver argues, are relevant to issues of the damages Sandia Vista claims based on the unexpectedly high cost of HVAC maintenance on the property. Even if these documents would otherwise be protected by the work product doctrine, Deaver contends, Sandia Vista must produce them because they were reviewed and considered by Dountas and/or Dobbie, and their status as designated expert witnesses means that every document they reviewed is discoverable.

Sandia Vista argues that Rule 26(a)(2) applies only to "retained" experts, and that neither Dobbie nor Dountas is a retained expert. Sandia Vista contends that policies applicable to retained experts have no applicability to "fact witnesses who have incidental opinion testimony." [Doc. 208, at 2.]

Rule 26(b)(4) divides experts into four classes and treats each class differently with respect to discovery. The classes are: (1) Experts whom a party expects to use at trial; (2) Experts retained or specially employed in anticipation of litigation or preparation for trial but not expected to be used at trial; (3) Experts informally consulted in preparation for trial but not retained; (4) Experts whose information was not acquired in preparation for trial (this class includes both regular employees of a party not specially employed on the case, and also experts who were actors or viewers of the

occurrences that gave rise to suit).  Ager v. Jane C. Stormont Hosp. & Training Sch. for Nurses, 622
F.2d 496, 500-01 (10th Cir. 1980).

      Sandia Vista asserts that neither Dobbie nor Dountas "were chosen as witnesses by counsel."
But, both have been listed as experts on whose testimony Sandia Vista intends to rely during the
prosecution of Sandia Vista's case.

      Dobbie and Dountas appear to fall within class (1) or (4) above, or both.  Both of these men
are employees of IPS, Dobbie as Vice President and CEO, Dountas as Property Manager, and they
undoubtedly came into contact with information regarding valuation and the HVAC system as part
of their normal employment duties with IPS.  Some of this information may have come from attorneys
who work not only for IPS but also for Sandia Vista.  Nevertheless, Sandia Vista listed these two as
expert witnesses who may testify as to valuation and damages, and Defendants are entitled to know
the data, facts and other information which led the two to form the expert conclusions to which they
will testify, in order that Defendants may be prepared to cross-examine these witnesses at trial.[4]

      If Dobbie and Dountas are considered to be in category (4), any facts and opinions they may
have are "freely discoverable as with any ordinary witness."  8 Charles Alan Wright & Arthur R.
Miller, et al., Federal Practice and Procedure § 2030 at 429 (2d ed. 1994); see also Advisory
Committee Note to 1970 Amendment to Fed. R. Civ. P. Rule 26.  Any information which Dobbie or

---

    [4]It is immaterial that Dobbie and Dountas were listed as experts who "may" testify.  Rule
26 does not make a distinction between expert witnesses who may testify and those who certainly
will testify.  Rather, the crucial distinction is between witnesses who are expected to testify, and
those who are retained to provide expert assistance to a party but who are not going to be called
to testify at trial.  Information revealed to the latter group is provided greater protection, in that
the opposing party must show "exceptional circumstances" in order to discover the basis for the
opinions of non-testifying experts and the facts and information on which those opinions are
formed.  Fed. R. Civ. P. 26(b)(4)(B).  Sandia Vista makes no argument that Dobbie and Dountas
will testify at trial.

Dountas acquired as "actors or viewers" of the facts giving rise to the lawsuit, or which they acquired in the ordinary course of their business, as opposed to information "prepared in anticipation for litigation," falls outside the definition of "work product" and thus falls outside the protection of that doctrine. Vargas v. United States (In re Grand Jury Proceedings), 727 F.2d 941, 945-46 (10th Cir. 1984); In re Grand Jury Proceedings, 156 F.3d 1038, 1042 (10th Cir. 1998).

And as the court held in Virginia Elec. & Power Co. v. Sun Shipbuilding and Dry Dock Co., 68 F.R.D. 397, 408 (E.D. Va. 1975):

> [It is] the Court's opinion that the 'in house expert' is to be treated, for purposes of discovery, as an ordinary witness. This view does not in any way prohibit any expert, in house or out, from giving an opinion in testimony at trial. It merely opens up that opinion, based on facts gained in the course of his employment, to discovery under Rule 26(b)(1).

If Dobbie and Dountas are considered to be in category (1), then each of them is a "person who has been identified as an expert whose opinions may be presented at trial" under Rule 26(b)(4)(A). Such experts may be freely deposed, and the basis for their expert opinions, including data or other information considered by them in forming their opinions, may be examined. Id. Dobbie and Dountas are not employees of Sandia Vista but of another company altogether. In any event, even if they were Sandia Vista employees, that does not make them different from any other witness who has been designated to testify at trial in an expert capacity. Kane Gas Light & Heating Co. v. Pennzoil Co., 99 F.R.D. 614, 615 (W.D. Pa. 1983).

However, the issue then arises whether information shared between the experts Dobbie or Dountas on the one hand, and any attorneys for Sandia Vista on the other hand, in preparation for litigation, is protected by the work product doctrine. The Court finds that it is not.

Although the Tenth Circuit has not ruled on this issue, a number of courts have applied a "bright-line" approach to this question, holding that all material provided to an expert witness who is expected to testify, including core work product material, is discoverable.  One rationale for this approach, among others, is that such that material will assist the adverse party in determining the extent to which the expert's opinion may have been influenced by counsel.

Moreover, District Courts within the Tenth Circuit have held that information and material that would otherwise have been considered attorney work product was nevertheless discoverable, because it had been presented to an expert witness.

For example, in Furniture World, Inc. v. D.A.V. Thrift Stores, Inc., 168 F.R.D. 61 (D.N.M. 1996), United States Magistrate Judge Leslie C. Smith granted plaintiff's motion to compel defendant's expert witness to answer certain questions put to her at her deposition, regarding documents furnished to her by defendant's counsel and other information exchanged between counsel and the witness in which counsel outlined her legal opinions, ideas and theories of the case.  In a thoughtful, well-reasoned opinion, Judge Smith held that any work product protection that would otherwise be applicable is trumped by the policy behind full disclosure of data or other information upon which a testifying expert relies.

The defendant in Furniture World argued that  the expert was actually intended to be a non-testifying consultant, which would mean plaintiff would have to show "exceptional circumstances" in order to justify disclosure.  Judge Smith rejected this assertion, holding that:

> a person initially selected to testify as an expert at trial cannot be shielded from questioning by later being also designated as a consultant expert and invoking the work product doctrine.  Counsel must choose to designate an expert as either one who will testify at trial **or** consult with counsel.  Having an expert who is both creates an unmanageable situation by requiring a question-by-question analysis

of an expert witnesses' deposition testimony to determine whether the
work product doctrine applies.

Id., at 63 (emphasis in original).[5]

Similarly, in Boring v. Keller, 97 F.R.D. 404 (D. Colo. 1983), the District Court upheld a
Magistrate Judge's ruling in a medical malpractice action, ordering production of certain work
product material.  One item was a deposition summary on which defendant's counsel had written his
impressions and evaluations of the plaintiff's deposition testimony which was inadvertently given to
expert witnesses; the other was as an "expert witness letter" which defendant's counsel intentionally
provided to expert witnesses and which contained general suggestions to the experts for their
deposition testimony.

The Boring court accepted plaintiff's argument that the attorney's "mental characterizations
. . . may adversely affect an expert's ultimate opinion of whether the defendant had in fact received
an informed consent from his patient," and that without disclosure of the documents, "Plaintiff will
not be able to demonstrate that the witnesses were not unfairly prejudiced by Pryor's [i.e., defense
counsel's] views of the parties."  Id., at 406.  The court concluded:

> Opinion work product is normally afforded a very high degree of
> immunity, but it is also subject to discovery when the need for such
> information is at issue and compelling . . . .  One situation in which
> opinion work product is not protected is where an expert witness
> utilizes counsel's opinion work product in order to formulate his or
> her opinion.

---

[5]See also, B.C.F. Oil Ref., Inc. v. Consol. Edison Co., 171 F.R.D. 57, 62 (S.D.N.Y.
1997), in which the court held that any ambiguity as to the role played by a person who is both
designated to testify and who also serves as a consultant must be resolved in favor of the party
seeking discovery; and Super Film of America, Inc. v. UCB Films, Inc., 219 F.R.D. 649 (D. Kan.
2004), in which a party's designation of an employee as an expert only "out of an abundance of
caution," in order to preserve the right to call him as an expert at trial, did not relieve the party of
the duty of disclosure applicable to testifying experts.

Id., at 407.  The court, noting that the work product doctrine is not absolute and may be waived, cited two reasons for its conclusion:  first, information underlying an expert's opinion does not become work product merely because attorneys confer with and counsel the expert; and secondly, cross examination of the expert would be hindered if opposing counsel were not able to examine information shared with the expert witnesses which might affect the credibility of the witness.  Id., at 408.  *See also* In re Air Crash Disaster at Stapleton Int'l Airport, 720 F. Supp. 1442, 1444 (D. Colo. 1988) ("the privilege normally afforded attorney work product gives way to the realities of expert preparation in regard to materials presented to an expert for consideration in forming an opinion to which he will testify at trial").

In Johnson v. Gmeinder, 191 F.R.D. 638 (D. Kan. 2000), another case within our Circuit, a United States Magistrate Judge held that defendants waived their work product privilege, with respect to material viewed by their testifying expert before the expert formulated his opinion.  The material in question was a report prepared by a non-testifying expert which had been disclosed to the testifying expert, who then relied on the report in rendering his opinion.

The Johnson court referred to a 1993 Advisory Committee Note which makes clear that all material, including work product or other privileged information, which is provided to a testifying expert is subject to disclosure:  "litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinion – whether or not ultimately relied upon by the expert – are privileged or otherwise protected from disclosure when such persons are testifying or being deposed."  Johnson v. Gmeinder, *supra*, at 646, *quoting from* the 1993 Advisory Committee Note.  The Advisory Committee Note, of course, is entitled to great deference as the Advisory Committee explains the rules and gives guidance to courts and counsel on how the rules should be interpreted.

The <u>Johnson</u> court adopted the reasoning of cases which interpret the Advisory Committee Note and the 1993 amendments to Rule 26 to apply a "bright-line" rule under which any information considered by a testifying expert is subject to production.  While recognizing that contrary authority exists in the District of Kansas, the court stated:

> The Court further notes that the majority of decisions handed down after the 1993 amendments have held that when an attorney provides any type of protected or privileged materials to a testifying expert who considers them in forming his/her opinions, the documents are no longer privileged and must be produced to the other parties to the lawsuit.  [Citing cases].  These cases recognize that even the *absolute* immunity provided for opinion work product must give way to Rule 26(a)(2)(B)'s all encompassing rule of disclosure.

<u>Johnson v. Gmeinder</u>, *supra*, at 647 (emphasis in original).  The court further held that where the expert has read or reviewed the privileged materials before or in connection with formulating his or her opinion, the expert will be deemed to have "considered" those materials for purposes of the Rule; the party seeking production need not make any further showing of the expert's subjective mental processes, nor need the party show that the expert "relied" on the materials at issue.

Cases from many other jurisdictions similarly hold that disclosure of work product to a testifying expert eliminates the protection of the work product doctrine.  In <u>Karn v. Ingersoll-Rand Co.</u>, 168 F.R.D. 633 (N.D. Ind. 1996), the court provided a thoughtful analysis of the expert witness requirements of Rule 26 and the effect of the 1993 amendments.  It concluded that the post-1993 Rule and its supporting commentary "reveal that the drafters considered the imperfect alignment between 26(b)(3) [discovery of work product material] and 26 (b)(4) [discovery of expert evidence] under the old Rule, and clearly resolved it by providing that the requirements of (a)(2) 'trump' any assertion of work product or privilege . . . [and] mandate disclosure of all materials reviewed by an expert witness."  <u>Id.</u>, at 639.

The <u>Karn</u> court further discussed the policy grounds supporting this "bright-line" rule. First, the court noted, "useful cross examination and possible impeachment can only be accomplished by gaining access to all of the information that shaped or potentially influenced the expert witness's opinion." <u>Id.</u>, at 639. Second, requiring disclosure of an attorney's communications to the expert does not impinge on the goals served by the opinion work product doctrine, in that the act of providing work product to an expert witness "generally does not result in counsel developing new theories or in enhancing the conducting of a factual investigation," the core activities which the work product doctrine is meant to protect. <u>Id.</u>, at 640. Third, the "bright-line" approach fosters certainty and "actually preserves opinion work product protection in that there is no lingering uncertainty as to what documents will be disclosed. Counsel can easily protect genuine work product by simply not divulging it to the expert." <u>Id.</u>, at 641.

*See also*:

<u>B.C.F. Oil Ref., Inc. v. Consol. Edison Co.</u>, *supra* note 2, at 66 ("one of the purposes of [the 1993 amendments to] the rule was . . . to resolve the tension between work product and disclosure of expert material by requiring that all materials furnished to an expert must be disclosed . . .");

<u>Musselman v. Phillips</u>, 176 F.R.D. 194, 201 (D. Md. 1997) ("Although it is not improper for an attorney to assist a retained expert in developing opinion testimony for trial . . . opposing counsel must be free during discovery to determine the nature and extent of this collaboration, in order to ascertain whether the opinion which is to be offered at trial is that of the expert, as opposed to the attorney");

<u>Lamonds v. Gen. Motors Corp.</u>, 180 F.R.D. 302, 306 (W.D. Va. 1998) ("An attorney wishing to maintain the protection afforded by the work product doctrine can choose to provide the expert with all relevant facts instead of directing the expert's attention to certain facts and instead of

including opinions and conclusions drawn by the attorney.  This approach permits an attorney to

know whether the information provided to an expert will later become discoverable and in no way

interferes with a lawyer's development of his case in private consultation with his client");

TV-3, Inc. v. Royal Ins. Co. of America, 193 F.R.D. 490, 492 (S.D. Miss. 2000) ("If the

lawyer's 'marching orders' are reasonable and fair, the lawyer and his client have little to fear.  If the

orders are in the nature of telling the expert what he is being paid to conclude, appropriate discovery

and cross-examination thereon should be the consequence"), *aff'd*, 194 F.R.D. 585 (S.D. Miss.

2000);

In re Pioneer Hi-Bred Int'l, Inc., 238 F.3d 1370, 1375 (Fed. Cir. 2001) ("fundamental fairness

requires disclosure of all information supplied to a testifying expert in connection with his

testimony");

Weil v. Long Island Savings Bank FSB, 206 F.R.D. 38, 40 (E.D.N.Y. 2001) (Rule 26 "does

not exempt 'core' work product from the disclosure requirement, nor does it limit disclosure to

factual material as opposed to mental impressions or opinions of counsel"); and

Regional Airport Auth. v. LFG, LLC, 460 F.3d 697, 717 (6th Cir. 2006) ("we now join the

overwhelming majority of courts . . . in holding that Rule 26 creates a bright-line rule mandating

disclosure of all documents, including attorney work product, given to testifying experts") (internal

punctuation omitted).

The Court recognizes that there is contrary authority, the leading case being Haworth, Inc.

v. Herman Miller, Inc., 162 F.R.D. 289 (W.D. Mich. 1995).  However, the Haworth line of cases

represents a minority position which has been rejected by a majority of other courts.  This Court finds

more persuasive the view, exemplified in the cases noted above, that the work product doctrine must

give way to the need for full disclosure of the factual and informational basis of an expert's opinion.

The Court thus directs that all of the items listed separately above must be disclosed to Deaver, with the exception of one item listed in the July 25, 2006 Privilege Log, an email containing discussion of photos of the parking lot.  This item appears to be outside the scope of information to which either Dobbie or Dountas will testify.

Items to be produced, therefore, are the following:  The specific items listed in the Privilege Log of April 3, 2006 which the Court has designated as Nos. 1-9 (see above); and specific items listed in the Privilege Log of July 25, 2006 which the Court has designated as Nos. 1-10 (including the six emails listed on page 2 of the July 25 log).

RFP No. 15

In RFP No. 15, Deaver seeks "all e-mails and correspondence between James Dobbie and Gary Goodman regarding the building that is the subject matter of this lawsuit."  Sandia Vista states that all such documents "have previously been produced and objected to in the privilege logs" of April 3, 2006 and June 8, 2006, and "Plaintiff objects to disclosing any further correspondence based upon work product, attorney-client privilege, IPS' relationship to Sandia Vista, LLC and this pending lawsuit."

Documents in the privilege logs which, it appears, are responsive to RFP No. 15 include the following, noted in the Privilege Log of April 3, 2006 at Page Three:

      1.  Email between Dobbie and Goodman relating to HVAC and liability, damage figures and the lawsuit, documents needed for the lawsuit, and other things.

      2.  Email by Dobbie (to an undisclosed recipient) involving instructions for search of corporate documents for initial disclosures.

These items are not protected by attorney-client privilege, as neither Dobbie nor Goodman serves as counsel for Sandia Vista.  Work product protection is not available, because of Dobbie's status as a designated expert witness, as discussed above.  Sandia Vista also objects on the general,

20

unexplained ground of "IPS' relationship to Sandia Vista, LLC and this pending lawsuit." The Court finds no basis for withholding these documents on the basis of the corporate relationships.

## **Order**

IT IS THEREFORE ORDERED that Defendant Victoria Deaver's Motion to Compel Sandia Vista, L.L.C. to Respond to Requests for Production [Doc. 139] is granted in substantial part.

IT IS FURTHER ORDERED that all material produced must be served on Deaver within ten days of the date of this Order.

_____
Lorenzo F. Garcia
Chief United States Magistrate Judge